UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MANDY COSTA WESTRICH**

    **Plaintiff,**

v.                                        Case No. 8:06-cv-00210-JSM-TGW

**DIOCESE OF ST. PETERSBURG, INC.,
DIOCESE OF ST. PETERSBURG, and
CLEARWATER CENTRAL CATHOLIC
HIGH SCHOOL**

    **Defendants.**
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT DIOCESE OF
ST. PETERSBURG, INC.'S AMENDED MOTION FOR ATTORNEYS' FEES**

      COME NOW Plaintiff Mandy Costa Westrich ("Plaintiff or "Westrich"), by and through her undersigned counsel, and responds to Defendant Diocese of St. Petersburg, Inc.'s amended motion for an award of attorneys' fees (Doc. 44) as follows:

**I.**

**BACKGROUND**

      Westrich was employed by Defendants as a development assistant.  Westrich claims Defendants terminated Westrich's employment because of her sex (pregnancy) in violation of Tile VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

      As detailed below, the relationship between the various Defendants is anything but clear.  Even though Westrich has requested a dismissal without prejudice of Diocese of St. Petersburg, Inc., she submits that it is not clear that the Diocese of St. Petersburg, Inc. is not a proper defendant in this action.  However, rather than adopt a "scorched

earth" litigation strategy, Westrich has decided to focus on recovering from the other solvent Defendants. She should not be penalized for making a reasonable decision to not fight every battle to the bitter end, especially when she can recover from Defendants that are clearly solvent.

A. <u>**Clearwater Central Catholic High School**</u>

Although Westrich working in a building called Clearwater Central Catholic High School, there is no entity registered with the Florida Secretary of State named Clearwater Central Catholic High School. There are two registered entities that include Clearwater Central Catholic High School in their name, the Clearwater Central Catholic High School Dad's Club, Inc. and Central Catholic High School Alumni Association. [Exhibit 1]. However, these entities have been inactive for many years and their names suggested that they were no involved in the active operation of the school.

The address of Central Catholic High School, 2750 Haines Bayshore Road, Clearwater, Florida is listed in the Pinellas County Tax Collector's Office and the Pinellas County Property Appraiser's Office as owned by "Diocese of St. Petersburg." [Exhibit 2].[1]

B. <u>**Diocese of St. Petersburg, Inc.**</u>

Unlike Clearwater Central Catholic High School or Diocese of St. Petersburg, the Diocese of St. Petersburg, Inc. is registered with the Florida Secretary of State. [Exhibit 3]. The Articles of Incorporation of Diocese of St. Petersburg, Inc., detail that the "sole

---

[1] During his deposition taken on October 18, 2006, Brother John Cummings, Superintendent of the Diocese of St. Petersburg, Office of Catholic Schools and Centers, testified that notwithstanding the filings with Pinellas County, it was his understanding the Clearwater Central Catholic, like all property within the Diocese, is owned by Bishop Robert N. Lynch.

member of this corporation shall be The Most Reverend Robert N. Lynch, as Bishop of the Diocese of St. Petersburg, and his successors in office." [Exhibit 3]. The registered Agent for the Diocese of St. Petersburg, Inc. is Joseph DiVito, who is counsel for Defendants in this case. [Exhibit 3].

The listed purposes of this corporation would lead a reasonable person to believe that the Diocese of St. Petersburg, Inc. is involved in the operation of the Catholic schools in Pinellas County. [Exhibit 3].

There are other entities registered with the Florida Secretary of State, including Catholic Charities, Diocese of St. Petersburg, Inc., that appear to have some connection to the Diocese. [Exhibit 4].

**C.    Diocese of St. Petersburg, Diocese Of St. Petersburg, a corporation sole, and Reverend Robert N. Lynch, as Bishop of the Diocese of St. Petersburg, a corporation sole**

There is no record of the "Diocese Of St. Petersburg," "Diocese Of St. Petersburg, a corporation sole," or "Reverend Robert N. Lynch, as Bishop of the Diocese of St. Petersburg, a corporation sole" as an entity on file with the Secretary of State. Notwithstanding the forgoing, a review of the records of Pinellas County Clerk's office suggests that on some occasions the Diocese operates under these names as a "corporation sole." [An example is attached as Exhibit 5].[2] [3]

---

[2]    A corporation sole is a common law entity that is "approaching obsolesce." *Hurley v. Werly*, 203 So. 2d 530, 533-34 (Fla. 2d DCA 1967); *see also Reid v. Barry*, 112 So. 846, 887, 997 (Fla. 1927)(discussing the common law corporation sole).

[3]    While beyond the scope of the issues currently before the Court, the failure of the Diocese of St. Petersburg, a corporation sole, to refer to itself in consistent legal terms is troubling and the Diocese of St. Petersburg, a corporation sole may wish to investigate these inconsistencies in more detail. The failure to observe corporate formalities could provide a possibility for a litigant to pierce the corporate veil. *See, e.g., Hilton Oil Transport v. Oil Transport Co., S.A.*, 659 So.2d 1141, 1152 (Fla 3d DCA 1995)(listing

The documents provided to Westrich during her employment and through this litigation repeatedly reference the "Diocese of St. Petersburg." Westrich is unaware of any materials produced to her during her employment or during this litigation that reference the "Diocese of St. Petersburg, a corporation sole" or "Reverend Robert N. Lynch, as Bishop of the Diocese of St. Petersburg, a corporation sole."

The Internal Revenue Service has recently undertaken an investigation of the use of the designation "corporation sole." *See IRS Warns of "Corporation Sole" Tax Scam, IR-2004-42,* March 29, 2004, http://www.irs.gov/newsroom/article/0,,id=121566,00.html. In light of this IRS scrutiny, the fact that the Diocese of St. Petersburg was not created until 1968, (five years after Clearwater Central Catholic High School opened in September 1963), and other recent legal troubles that have confronted Catholic institutions nationwide, it would not be beyond the realm of possibility that Defendants would operate through the entity registered with the Secretary of State.

**D.     Diocese of St. Petersburg, Inc. As A Defendant In Other Litigation**

If Westrich was mistaken in assuming that the only entity registered with the Secretary of State was a proper defendant in this action, she is far from the first litigant to make this mistake. A search of the clerk of court records of Pinellas County, Hillsborough County and Middle District of Florida reveals at least 15 other matters where the Diocese of St. Petersburg, Inc. was listed as a defendant. [Exhibit 5].

A limited review of some of these cases suggests that not withstanding the claims that the Diocese of St. Petersburg, Inc. does no business and has no assets, it has participated in settlements of other litigation. This includes *Zigmund v. Diocese of St.*

---

failure to observe corporate formalities as a factor courts consider when piercing the corporate veil).

*Petersburg, Inc.,* Case 8:02-cv-01925-RAL a case involving claims of sex discrimination under Title VII against a Catholic school and the Diocese of St. Petersburg, Inc. In *Zigmund,* the Diocese of St. Petersburg, Inc., represented by the same counsel as counsel in the case at bar, was involved in the settlement of the case. *See id*. (Doc 21 Filed 03/13/2003).

E.  **Diocese's Involvement In This Litigation**

In their motion, Defendants essentially seek to assert that the Diocese of St. Petersburg was not involved in this matter until one day with no warning, out of the blue, Westrich sued them. In fact, the Diocese has been involved in this matter from the earliest stages. On at least four different occasions during the administrative investigation of this charge, Defendants' counsel admitted to the Pinellas County Office of Human Rights ("PCOHR") and the Equal Employment Opportunity Commission ("EEOC") that this matter involved the Diocese. [Composite Exhibit 6 - Feb. 20, 2004 letter of DiVito to PCOHR, Jan. 28, 2005 ("the Diocese of St. Petersburg and specifically Clearwater Central Catholic High School"); Jan 28, 2005 letter of Holtzman to EEOC ("Clearwater Central Catholic High School/Diocese of St. Petersburg, Florida"); Feb. 2, 2005 letter of Holtzman to EEOC ("the Diocese of St. Petersburg/ Clearwater Central Catholic High School"); Aug. 18, 2005 letters of Holtzman to EEOC ("the Diocese of St. Petersburg and Clearwater Central Catholic High School").. None of this correspondence to the PCOHR or EEOC identified the "Reverend Robert N. Lynch, as Bishop of the Diocese of St. Petersburg, a corporation sole" or the "Diocese of St. Petersburg, a corporation sole."

**F.     Information Available To Westrich And The Court**

Defendants seek to assert that Westrich should have known that the Diocese of St. Petersburg, Inc. was not a proper defendant at the time of the filing of the suit, or when she received the affidavits in support of the motions to dismiss. However, as noted above, none of the information available to Westrich during her employment, provided to the PCOHR and EEOC, or detailed in the affidavits explained the structure of the Defendants in detail or even referred to the "Diocese of St. Petersburg, a corporation sole" or "Reverend Robert N. Lynch, as Bishop of the Diocese of St. Petersburg, a corporation sole."

In addition, missing from the affidavits filed in support of the motions to dismiss was any explanation of who the proper defendants would be in this suit. Also missing from the affidavits is any explanation of why a corporation was created that does no business, why it was involved in the apparent settlements of these other suits, and how the Diocese of St. Petersburg, Inc is paying its apparently very expensive legal team if it has no assets.

## II.

## ARGUMENT

**A.     The Voluntary Dismissal Without Prejudice Of This Suit Is Proper**

Pursuant to Rule 41 of the Federal Rules of Civil Procedure, an action may be dismissed at the Plaintiff's instance "upon order of the court and upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2) (2004). In the Eleventh Circuit, an action may be voluntarily dismissed by a plaintiff under a Rule 41(a)(2)

motion providing for a dismissal without prejudice unless the defendant will suffer some clearly definable prejudice.

In *Pontenberg v. Boston Scientific*, 252 F.3d 1253, 1255 (11th Cir. 2001), after the defendant moved for summary judgment, the plaintiff filed a notice of voluntary dismissal without prejudice. The district court then entered an order dismissing the suit without prejudice and denying as moot the motion for summary judgment. *See id.* In *Pontenberg,* the defendant argued that it was prejudiced by the dismissal without prejudice because it denied the defendant the opportunity to receive a ruling on a pending summary judgment motion. In rejecting this argument, the Eleventh Circuit discussed *McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 857 (11th Cir. 1986) where the Eleventh Circuit held "that the mere attempt to avoid an adverse summary judgment ruling in of itself, particularly where there is no evidence of bad faith, does not constitute plain legal prejudice." *Id.* at 1258. The Court also noted "that the mere pendency of a summary judgment motion, by itself, does not constitute legal prejudice sufficient to support a denial of a Rule 41(a)(2) voluntary dismissal without prejudice." *Id*. at 1258.

In this case, there has been no evidence of bad faith by plaintiff in deciding to voluntarily dismiss Diocese of St. Petersburg, Inc. Therefore, the voluntary dismissal without prejudice of the Diocese of St. Petersburg, Inc. is appropriate because defendant has not shown any clear legal prejudice. *Id.* at 1255 *citing McCants*, 781 F.2d at 857 ("[I]n most cases, a voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice, *other then the mere prospect of a subsequent lawsuit,* as a result."). *See also Versa Products, Inc. v. Home Depot*, 2004 U.S. App. LEXIS 21591 (11th Cir. Oct. 18, 2004) ("The basic purpose of Rule 41(a)(2) is to freely permit the plaintiff, with

court approval, to voluntarily dismiss an action so long as no other party will be prejudiced.").

### B. Westrich Should Not Be Required To Pay Diocese of St. Petersburg, Inc.'s Attorney's Fees

Plaintiff's dismissal should not be conditioned on her paying for Diocese of St. Petersburg, Inc. attorneys' fees as Diocese of St. Petersburg, Inc. argues. Indeed, the case law in this Circuit generally holds that a voluntary dismissal will not be conditioned on payment of attorneys' fees and costs absent exceptional circumstances, such as where the litigation was "false, unjust, vexatious, wanton, or oppressive, or where it was unnecessary or groundless or conducted in bad faith or with fraudulent intent." *Murdock v. Prudential Ins. Co.*, 154 F.R.D. 271 (M.D. Fla. 1994). Likewise, even when a requested dismissal is without prejudice, the released defendant is not entitled to recover any of its expenditures unless it can show that it would otherwise be prejudiced by the dismissal.

### C. The Diocese of St. Petersburg, Inc. Is Not A Prevailing Party Under *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)

In the Motion, Diocese of St. Petersburg, Inc. claims that it is entitled to fees under *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648. Diocese of St. Petersburg, Inc.'s argument fails because *Christiansburg* only applies to prevailing parties. In *Chacon v. Ezekiel*, 957 F. Supp. 1265, 1267 (S.D. Fla. 1997), the court held that where there was not an adjudication on the merits, the defendant was not a prevailing party. Therefore, "[s]ince Defendants are not prevailing parties its is immaterial whether Plaintiff's suit was frivolous, unreasonable, or without foundation…"

*Id.* As held in *Chacon,* because Diocese of St. Petersburg, Inc.'s is not a prevailing party, the motion should be denied.

**D.     Plaintiff's Claims Were Not Frivolous, Unreasonable, Or Groundless**

Even if Diocese of St. Petersburg, Inc. was a prevailing party, the Supreme Court has held that in civil-rights cases the "plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978) (addressing Title VII's fee-shifting provision). "[I]f a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Christiansburg*, 434 U.S. at 422, 98 S.Ct. at 701.

In this context, the district court "must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Sullivan v. Sch. Bd. of Pinellas County*, 773 F.2d 1182, 1189 (*quoting Jones v. Texas Tech Univ.*, 656 F.2d 1137, 1145 (5th Cir. Unit A Sept.1981). In the cases in which the Eleventh Circuit has sustained findings of frivolity, plaintiffs have typically failed to "introduce any evidence to support their claims." *Sullivan*, 773 F.2d at 1189. Other factors that may be relevant to this inquiry include "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Id.* The Sullivan factors, however, are "general

guidelines only, not hard and fast rules," and "[d]eterminations regarding frivolity are to be made on a case-by-case basis." Id.

In this case, all of the *Sullivan* factors weight against the imposition of fees and costs against Westrich. First, not only is Westrich able to establish a prima facie case, the PCOHR and EEOC determined that there is reasonable cause to believe that she was discriminated against. Second, the defendants have made settlement offers.[4] Third, Westrich is seeking a dismissal prior to trial (or even filing of a motion for summary judgment) to reduce the expenses of the parties and the Court.

As the Supreme Court noted in *Christiansburg*, it is important for a District Court not to engage in post hoc reasoning by concluding that because the plaintiff ultimately did not prevail the action must have been without merit. *Id*. at 422. As the Court stated in *Christiansburg*, "That kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable." *Id.*

Recently, in *Cordoba v. Dillard's Inc.,* 419 F.3d 1169 (11th Cir. 2005), the Eleventh Circuit again engaged in a lengthy discussion of attorney's fees for prevailing defendants. The Eleventh Circuit reaffirmed the core holding of *Christiansburg* that litigation should not be judged with hindsight.

---

[4] After counsel for Westrich advised counsel for the Diocese of St. Petersburg, Inc. that the statements in the motion regarding settlement offers was inaccurate, the Diocese of St. Petersburg, Inc. filed an amended motion. The amended motion still fails to recognize that any settlement would have included a release of claims against the Diocese of St. Petersburg, Inc. See discussion of *Zigmund* above.

In this case, Westrich has meritorious claims that she is entitled to pursue and she simply wishes to dispense with the one of Defendants so as to eliminate the expenditure of costs and time that would be associated with having to engage in further discovery and trial over what is the same basic nucleus of operative fact supporting the allegations of discrimination when there are other Defendants available.

Clearly, public policy is not served by penalizing a plaintiff who acts to dismiss her claims against one defendant because of the availability of other defendants to provide redress for her damages as opposed to continuing to litigate in a "scorched-earth" fashion simply to drive up fees and costs. Westrich believes that she could recover against Diocese of St. Petersburg, Inc. However, as Clearwater Central Catholic High School and the Diocese of St. Petersburg both remain defendants, Westrich is willing to voluntarily dismiss this defendant without prejudice.

Since no prejudice will result to any party and Plaintiff's claims were not frivolous or vexatious, Plaintiff respectfully requests that the Motion for Voluntary Dismissal be granted and not conditioned on the paying of Defendant's fees and costs.

E.     **The Attorney's Fees Are Unsupported And Excessive**

Even assuming *arguendo* that fees were appropriate, which they are not, Diocese of St. Petersburg, Inc.'s request for fees should be denied because they are unsupported and excessive.

The party seeking attorneys' fees bears the burden of producing "satisfactory evidence that the requested rate is in line with prevailing market rates," which normally requires "more than the affidavit of the attorney performing the work." *Loranger v. Stierheim*, 10 F.3d 776, 779 (11th Cir.1994). In this case, Diocese of St. Petersburg, Inc.

has only produced an affidavit of one of the attorneys in this case who asserts that the rates sought are less than the prevailing market rates.  Under the law in the Eleventh Circuit, this is not sufficient to support the award of the rates sought.  In addition, the affidavit of Holtzman provides no detailed information or support for the training, qualifications, or experience of counsel for the Diocese of St. Petersburg, Inc.

The fee applicant also bears the burden of documenting the appropriate number of hours.  *See Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir. 1998), *citing Hensley v. Eckerhardt, 461* U.S. 424, 437 (1983); *United States v. Blue Cross and Blue Shield of Florida, Inc.*, 882 F.Supp. 166, 170 (M.D.Fla.1995).  Courts have often recognized that cases may be overstaffed and that hours representing attorney overstaffing should be excluded from fee applications.  *See Hensley*, 461 U.S. at 433; *ACLU of Ga. v. Barnes,* 168 F.3d 423, 434 (11th Cir.1999)(reduction for lawyer overstaffing); s*ee also Cush-Crawford v. Adchem Corp.*, 94 F.Supp.2d 294, 302 (E.D.N.Y. 2000) (holding that in a single plaintiff sexual harassment trial three attorneys was excessive).  In addition, at least one federal court in Florida has held that when a party uses a sledgehammer to chip away at the opposing party's assertions fees are not appropriate.  *See Goss v. Killian Oaks House of Learning*, 248 F.Supp.2d 1162 (S.D.Fla. 2003)(holding that when a party litigated a matter in such a way as to cause extraordinary attorneys fees, award of no fees was reasonable).

Counsel for the Diocese of St. Petersburg, Inc. spent an excessive amount of time drafting the motion to dismiss the amended complaint (Doc. 9) which was substantial similar to the original motion to dismiss (Doc. 5).  Westrich is unable to determine why so much time could have been necessary to simply cut and paste the majority of the

document. This includes time for Mr. Steffen on 3/03/06 (4.3 hours), 3/09/06 (0.7 hours) 3/16/06 (6.5 hours) and time for Mrs. Holtzman on 3/10/04 (0.4 hours). The Court should not award fees for these 11.9 hours.

In addition, the time of Mr. Steffen and Mrs. Holtzman spent on an unfiled supplemental motion for summary judgment was excessive and unnecessary. If as Diocese of St. Petersburg, Inc. claims, it should have been clear to Westrich and her counsel prior to the filing of the complaint or after the filing of the affidavit that Diocese of St. Petersburg, Inc. was not a proper defendant, then it was not reasonable for Diocese of St. Petersburg, Inc. to have spent extraordinary hours on this issue, as the prior pleadings would have been sufficient to allow the Court to resolve the matter. Mr. Steffen spent time on 3/31/06 (3.5 hours), 4/25/06 (3.4 hours), 6/16/06 (1.6 hours) 6/23/06 (2.3 hours), 6/28/06 (2.3 hours), 6/29/06 (1.0 hours), 7/03/06 (1.0 hours), 7/12/06 (0.5 hours), 7/13/06 (0.8 hours), 7/14/06 (2.4 hours) on a motion that was not filed and unnecessary. Mrs. Holtzman spent time on 4/19/06 (0.2 hours), 7/10/06 (0.1 hours) 7/14/06 (0.6 hours) on a motion that was not filed and unnecessary. Therefore, all of the time devoted to the unfiled supplemental motion for summary judgment should be denied. The Court should not award fees for these 16.4 hours.

Counsel for Diocese of St. Petersburg, Inc. spent an extraordinary amount of time seeking their fees in this matter. Specifically, Mr. Steffen's time on 7/15/06 (3.2 hours), 7/17/06 (4.0 hours) 7/18/06 (1.0 hours), 8/09/06 (0.7 hours), 9/13/06 (0.1 hours), 9/14/06 (1.7 hours), 9/15/06 (4.0 hours), and Mrs. Holtzman's time on 7/13/06 (0.8 hours), 7/14/06 (0.1 hours), 7/18/06 (0.3 hours), 9/21/06 (0.1 hours) 9/21/06 (0.1 hours). The

time spent seeking fees is so extraordinary that it should be denied. The Court should not award fees for these 16.1 hours.

In addition, John W. Campbell spent 6.1 hours preparing and attending a hearing that lasted less than 30 minutes. If Holtzman or Stefen had attended this hearing, the preparation time would have been significantly less, as they had substantial involvement in this matter prior to the hearing. Therefore, the 6.1 hours of Mr. Campbell's time should be denied.

There is no reference in the affidavit of Holtzman of who Patti Meyer is or what her training, qualifications or experience were. Nor is there any reference as to why she should have spent 0.2 hours reviewing a court order. Therefore, the 0.2 hours of Ms. Meyer's time should be denied.

To the degree that the Court believes that it would be appropriate to award defendants with any fees, Westrich asserts that the Court should only award Diocese of St. Petersburg, Inc., 0.2 hours at Mr. Steffen's rate. This amount represents the reasonable fees that Diocese of St. Petersburg, Inc. should have incurred in calling counsel for Westrich and advising counsel of the proper name of the defendant and detailing the structure set forth in detail above.

**F.**     **Request For Evidentiary Hearing**

If the Court is inclined to enter a sanction order against Westrich by requiring her to pay legal fees and costs of the Diocese of St. Petersburg, Inc., Westrich request an evidentiary hearing. *See generally, Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180 (11th Cir. 2006). At this hearing, Westrich would have the opportunity to question

Defendants' representatives and their counsel under oath about the corporate structure of the Diocese and the reasonableness of the fees and costs.

## III

## CONCLUSION

In sum, Diocese of St. Petersburg, Inc. is attempting to penalize Westrich for taking them at their word and dismissing the Diocese of St. Petersburg, Inc. This attempt to act in good faith has been met with an attempt to recover almost $13,000 in attorneys' fees.

Respectfully submitted:

/s/ Ryan D. Barack
Ryan D. Barack
Florida Bar No. 0148430
rbarack@kscblaw.com
Gregory K. Showers
Florida Bar No. 000760
gshowers@kscblaw.com
Kwall, Showers, Coleman & Barack, P.A.
133 North Fort Harrison Avenue
Clearwater, Florida 33755
(727) 441-4947
(727) 447-3158 Fax
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished by ECF this 19th day of October 2006 to the following:

Michael Dennis Malfitano
John W. Campbell
Gail G. Holtzman
David P. Steffen
Constangy, Brooks & Smith, LLC
100 North Tampa Street, Suite 3350

Tampa, Florida 33602

Joseph DiVito
DiVito & Higham, P.A.
4514 Central Ave.
St. Petersburg, Florida 33711

                                                                                                                                                                  /s/ Ryan D. Barack
                                                                                                                                                                      Attorney